Gaston, Judge,
 

 having stated the case as above, proceeded as follows. — The first error assigned in this case for the reversal of the judgment rendered in the Superior Court is, that the jury was misdirected as to the nature of the restraint which would in law constitute an imprisonment. For the defendant it is insisted, that nothing can constitute an
 
 arrest
 
 amounting to an injurious imprisonment, short of an
 
 actual
 
 interference with the person, or compulsory restraint thereof; and that upon the testimony there was no proof of actual interference with the person of the plaintiff', nor that the submission of the plaintiff was other than a voluntary submission to appear before a magistrate for the investigation of the charge brought against him. Many cases have been produced to establish the legal position taken by the defendants’ counsel, which we deem it unnecessary particularly to notice, for we think the position properly understood to be correct. There must be an actual interference with one’s person, or compulsory restraint, to constitute imprisonment. But what is meant by compulsory restraint? It is not identical with
 
 actual interference,
 
 or it would be a superfluous description. Is it more or less than submission to restraint without incurring the risque of personal violence and insult by resistance ? If an officer, or
 
 *524
 
 one claiming a right to
 
 obedience,
 
 require of another to accompany him, this alone is not an arrest. As yet, there is no compulsion, nor restraint. Compulsion is indeed intimated, but is not exerted. But when obedience is yielded to that command — when, in submission to it the person commanded accompanies him who gives the order, the movement is by compulsion, and not through choice, and his person is then under restraint. The distinction is well taken in Buller’s Nisi Prius, page 62, “ bare words will not make an arrest; but if a bailiff who has process against one, says to him, when he is on horseback, or in a coach, ‘you are my prisoner, I have a writ against you;’ on which he submits and goes with him, though the bailiff never touched him, it is an arrest,
 
 because
 
 he submitted ; but if, instead of going with the bailiff, he had gone or fled from him, it would be no arrest, .unless the bailiff had laid hold of him.” In the present case, there was abundant evidence of restraint by compulsion. The defendant Boyd, claiming to have an authority by precept to take the plaintiff’s person, and having a force at hand to enable him to execute the alleged precept, announces his authority, and requires submission. It is yielded — the plaintiff goes with the supposed officer, as a prisoner. The precept is returned, executed, and the plaintiff is kept in custody, until he relieves his person from restraint, first, by a conditional deposit of money, and then by entering into recognizances for making his appearance in Court, to answer for the criminal charge upon which he was brought before the magistrate.
 

 The next and most important point in the cause is, whether the arrest of the plaintiff was by lawful authority. His Honor instructed the jury, that as the warrant commanded the defendantBoyd to take no person bynameor by description, other than by the vague description “ company,” it did not give an authority to arrest any person. It has not been questioned, and it cannot be questioned, but that a warrant to arrest persons not named nor described with reasonable certainty, is altogether void. The magistrate who acts upon the information laid before him is to
 
 judge
 
 whether a warrant shall issue, and against
 
 *525
 
 whom it shall issue. The authority of the officer, or person acting under the warrant is purely ministerial. The magistrate must give
 
 certain directions
 
 as to the persons to be arrested — and he who acts under the mandate must arrest those only whom the mandate directs him to arrest. 1st Hale’s Pleas of the Crown, 580. Haw. B. 2, ch. 13, sect. 10.
 
 Money
 
 v.
 
 Leach,
 
 1 Bl. 562; 3 Burr. 1692.
 
 Wilkes
 
 v.
 
 Wood,
 
 Loft. 18; 11 State Tri. 323. This certainty in warrants has been deemed so essential to the liberty of the citizen, that our Constitution denounces all general warrants, where,by any officer or messenger may be commanded to search suspected places without evidence of the fact committed — “orto seize any person or persons not named,” and whose offence is not particularly described and supported by evidence, as dangerous to liberty, and not to be granted. Declaration of Rights, sect. 11. But the counsel for the defendants contend, that in this warrant the plaintiff is named ; and that although the warrant, on the face of it, is illegal and null, so far as it commands the arrest of uncertain persons, it is a valid warrant for the arrest of the plaintiff. We do not deem it necessary to determine whether a warrant containing a mandate forbidden by our Bill of Rights, is altogether null — or whether it is null only so far as it violates that prohibition. For, admitting that it may be good in,part — a point not free from doubt — we feel ourselves bound to hold, that the warrant in this case did not command the arrest of the plaintiff, by name, or by certain description. The mandatory part of the warrant — the precept — is “ to apprehend
 
 the said company,
 
 and them safely keep, so that you have them to answer,” &o. This is unquestionably
 
 per se
 
 altogether vague and uncertain. Is it rendered certain by means of the
 
 reference
 
 contained in the words prefixed to company, “ the said company
 
 1”
 
 On looking into the previous parts of the warrant, all that we find to which a reference can be applied is in the recital that complaint had been made of a battery committed by John Mead and company. The “said company,” in the precept means the company mentioned in the recital. It can mean in the precept only what it means in the recital. It comprehends
 
 *526
 
 no more in the one than it embraces in the other. In the recital it means and comprehends the associates or comPan*ons °f John Mead only, and not Mead himself; in the precept, therefore, it means and comprehends these associates only. Who are they ?
 

 
 *525
 
 Whether a warrant containing a mandate for seizing a certain person, and others neither named nor described, is altogether null under the 11th section of our Bill of Rights; or whether it is null only so far as it is uncertain, and is good for the residue, Qu?
 

 
 *526
 
 It has been urged, that the warrants of magistrates ought not to be examined in the spirit of minute criticism ; and in support of this proposition, we are referred to the 16th sect, of the act of 1794,
 
 {Rev. ch.
 
 414,) by which it is declared, “ that no attachment, warrant, or other process issued by a justice of the peace, shall be set aside for the want of form, if the essential matters required are set forth in such process.” This enactment,
 
 as such,
 
 must be understood as applying only to the subject-matter of the act, which is an act directing
 
 the mode of recovering debts
 
 before justices of the peace. But we adopt unhesitatingly the
 
 principle
 
 contained in the enactment, as one recognized by the common law in reference to the subject before us. But is the objection to the validity of this warrant one merely for
 
 want of form ?
 
 By the best established principles of the common law — principles deemed so important, as to be embodied in our Constitution, and placed beyond the reach even of legislation — certainty of the person so to be seized, is “ an essential matter required,” in every warrant to apprehend a man for an imputed crime. In the judgment of the Court, there was no error in this part of the judge’s charge.
 

 Another point has been taken by the defendants, that the judge erred .in permitting testimony to be heard by the jury of the payment by the plaintiff to the defendant Young, of one hundred and fifty dollars on account
 
 of
 
 this business. In answer to this objection, it would be sufficient to say> that it does not appear who offered this testimony, whether the plaintiff or the defendant; and that if it could be inferred from the case, that it was offered by the plaintiff, ■it does not appear that objection was made to the reception of it. But waiving these answers, we are at á loss to see on what good ground
 
 either
 
 party could object to its being brought before the jury. It was a part of the transaction to be investigated, material to show the
 
 *527
 

 animus
 
 which influenced the proceedings — whether an honest purpose to vindicate an acknowledged and severe injury, or a corrupt scheme to extort money by an oppressive prosecution. In what light it was considered by the jury, we have no means of knowing. But it was a circumstance, in connection with all the other circumstances of the case, fit to be considered and weighed in fixing the amount of damages. The judgment is affirmed.
 

 Per Curiam. Judgment affirmed.